WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stanford Lameman,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-08074-PCT-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Stanford Lameman's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint, (Doc. 1), and an Opening Brief, (Doc. 12), seeking judicial review of that denial. Defendant SSA filed an Answering Brief, (Doc. 13), to which Plaintiff replied, (Doc. 14). The Court has reviewed the parties' briefs, the Administrative Record, (Doc. 11), and the Administrative Law Judge's ("ALJ's") decision, (Doc. 11-2 at 16–31), and will affirm the ALJ's decision for the reasons addressed herein.

**I.    BACKGROUND**

Plaintiff filed an Application for SSDI benefits in April of 2019, alleging a disability beginning in November of 2018. (Doc. 11-7 at 43–44.) Plaintiff's claim was initially denied in August of 2019. (Doc. 11-3 at 2–16.) A hearing was held before ALJ Michelle K. Lindsay on April 20, 2021. (Doc. 11-2 at 16.) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from severe impairments including

congestive heart failure, osteoarthritic hypotension, kidney disease, degenerative joint disease of the left knee, low vision of both eyes, bilateral optic atrophy, and obesity, none of which met or medically equaled a listed impairment. (*Id.* at 19.) However, the ALJ concluded that, despite these impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.* at 21.) Consequently, Plaintiff's Application was again denied by the ALJ on May 24, 2021. (*Id.* at 31.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the final decision of the SSA Commissioner (the "Commissioner")—and this appeal followed. (Doc. 1.)

## II.   LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.   DISCUSSION

Plaintiff argues that the ALJ committed harmful error in evaluating the medical opinion evidence. (Doc. 12.) The Commissioner argues that the ALJ's opinion is supported by the record as a whole and free of error. (Doc. 13.) The Court has reviewed the medical and administrative records and agrees with the Commissioner for the following reasons.

### A. Evaluation of Medical Testimony

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians; those who examined but did not treat the claimant are examining physicians; and those who neither examined, nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* This is because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830). An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For claims filed after March 27, 2017, such as this claim, the rule that previously gave deference to opinions from treating physicians has been rescinded. Additionally, the changes in regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting and examining [or treating] doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). However, the court held that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence". *Id.* at 792. The revised regulations require that the ALJ explain only how she considered the

supportability and consistency of a medical opinion when assessing its persuasiveness. *Id.*; *see also* 20 C.F.R. § 404.1520c.

Plaintiff argues that the ALJ did not give adequate evidence or reasoning for discounting Dr. Laura DeWitt's opinion and evaluation of Plaintiff's condition. (Doc. 12 at 11–25.) The Commissioner argues that the ALJ, after evaluating the record, reasonably found Dr. DeWitt's opinion unpersuasive. (Doc. 13 at 3–16.)

Here, the ALJ evaluated Plaintiff's claim using, in part, the medical opinions of three doctors: Dr. Coleman, Dr. Wavak, and Dr. DeWitt. (Doc. 11-2 at 26–27.) The ALJ adopted the opinion of Dr. Coleman, finding that Plaintiff would be "limited to range of work at the sedentary exertional level," and his "low vision of both eyes and optic atrophy were severe." (Doc. 11-2 at 27.) The ALJ made this determination, in part, because Dr. Coleman's findings were supported by both the patient's testimony and physical examinations. (*Id.*) The ALJ found Dr. Wavak's opinion unpersuasive. Plaintiff does not contest this finding. (Doc 12.) However, Plaintiff does contest the ALJ's partial discounting of Dr. DeWitt's evaluation.

Unlike Dr. Coleman, Dr. DeWitt opined that Plaintiff would be unable to complete simple reports such as those involving invoices and receipts, unable to work a cash register making change or reading price tags and would be unable to work jobs involving small parts. (Doc. 11-8 at 218–19.) The ALJ discounted this evaluation. The ALJ found that while some of this opinion echoed Dr. Coleman's opinion, the parts that differed would reduce Plaintiff's RFC beyond that of Dr. Coleman's opinion and was also inconsistent with the medical record and Plaintiff's daily activities. (Doc. 11-2. at 28.) Plaintiff argues that the ALJ does not adequately link how the medical record and Plaintiff's daily activities undercut Dr. DeWitt's findings. (Doc 12 at 21.) The Court disagrees. The ALJ noted that Plaintiff is able to watch TV, shop at stores, cook and meal plan, count coins, garden and do yardwork. (Doc. 11-2 at 28.) This testimony directly contradicts Dr. DeWitt's finding that Plaintiff would be unable to make change, handle receipts, or read price tags, as several of these activities require the ability to complete these tasks. The ALJ also compared Dr.

DeWitt's evaluation with the medical record, specifically noting Plaintiff's eye exams showing Plaintiff has not required further examinations for worsening vision, blurred vision, eye pain or other complaints within the last ten years. (*Id.*) Although Plaintiff is correct that failure to seek further treatment alone cannot be reason to discount testimony, here, that is just one factor the ALJ used, not the basis of the entire denial. *See Carmickle v. Commr., Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008). Considering this, and Plaintiff's own contradictory testimony, the ALJ reasonably discounted Dr. DeWitt's testimony.

Next, Plaintiff argues that in addition to inappropriately discounting Dr. DeWitt's opinion, the ALJ also incorrectly interpreted Dr. DeWitt's eye examination in denying Plaintiff benefits under 20 C.F.R. § 404, Subpart P, Appendix 1. Where a claimant proves that they have an impairment, or combination of impairments specifically listed in this section, the ALJ should award them benefits without considering age, education or work experience. *See* 20 C.F.R. § 404.1520(a)(4)(iii). An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant . . . ." 20 C.F.R. § 404.1526(a), (c). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Walraven v. Astrue*, No. CV07-02041-PHX-GMS, 2008 WL 5427735, at *3 (D. Ariz. Dec. 31, 2008). That said, claimants have a high burden to demonstrate that they meet a listed impairment because they were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (internal quotations omitted).

Plaintiff argues that per Dr. DeWitt's eye examination, Plaintiff meets the criteria for the 2.02 and 2.04(B) listed disabilities, which the ALJ failed to adequately consider. (Doc. 12 at 21); *see also* 20 C.F.R. § 404, Subpart P, Appendix 1, 2.02, 2.04. The Commissioner argues that Plaintiff failed to meet any of the listed disabilities, and the ALJ

appropriately explained why. (Doc. 13 at 16.)

To qualify for a disability under Listing 2.02 "Loss of Central Visual Acuity" a claimant must show "[r]emaining vision in the better eye after best correction is 20/200 or less." 20 C.F.R. § 404, Subpart P, Appendix 1, 2.02. The agency uses "visual acuity testing for distance that was carried out using Snellen methodology or any other testing methodology that is comparable to Snellen methodology." *Id.* 2.00(A)(5)(a). "Most test charts that use Snellen methodology do not have lines that measure visual acuity between 20/100 and 20/200." *Id.* 2.00(A)(5)(b). Where a Snellen chart does have lines measuring visual acuity between 20/100 and 20/200, "and [claimant] cannot read any of the letters on the 20/100 line, [the Commission] will determine that you have statutory blindness on a visual acuity of 20/200 or less. For example, if [claimant's] best-corrected central visual acuity for distance in the better eye is 20/160 . . . [the Commission] will find that [claimant has] statutory blindness." *Id.* However, as the Commissioner notes, there are exceptions. (Doc. 13 at 18.) Where a claimant can read at least one letter on the 20/100 line they will not be found to satisfy 2.02, as their best corrected vision falls outside what the listing requires. Further, the agency will not use pinhole testing to make a best corrected vision determination. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, 2.00(A)(5)(iii).

Here, Dr. DeWitt gave two visual acuity readings, with the most recent being from July 2020. (Doc. 11-8 at 214–220.) This report provides that Plaintiff's better eye visual acuity is 20/125 + 1, which falls into an exception to 2.02 status, and does not qualify. This is exactly what the ALJ found in her opinion. Doc 11-2 at 20. Dr. DeWitt's second reading was from September 2019, and used pinhole testing as designated by the abbreviation "ph NI." (Doc. 11-8 at 209.) The ALJ also correctly found that this testing cannot be used for a visual acuity determination. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, 2.00(A)(5)(iii). Therefore, the Court finds that the ALJ appropriately considered and denied disability under Listing 2.02.

To qualify for disability under Listing 2.04 "Loss of visual efficiency, or visual impairment, in the better eye" a claimant must show that he either has a visual efficiency

percentage of 20 or less after best correction, or a visual impairment value of 1.00 or greater after best correction. 20 C.F.R. § 404, Subpart P, Appendix 1, 2.04. Plaintiff argues he meets the latter requirement by adding the central visual acuity numbers for both eyes together. (Doc. 12 at 24-25.) However, this is not how loss of visual efficiency is calculated under the applicable regulations. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, 2.00(A)(8). Further, as noted by the Commissioner and the ALJ, Plaintiff did not undergo a proper visual acuity test because Dr. DeWitt used pinhole testing for these values, which may not be used for listing determinations, and therefore renders any resulting number irrelevant to qualify for disability under 2.04. *Id.* Therefore, the ALJ correctly determined that Plaintiff also did not meet disability under 2.04.

Therefore, because the ALJ's decision is supported by substantial evidence, the Court finds no error in the ALJ's assessment of medical testimony.

### IV. CONCLUSION

Therefore,

**IT IS ORDERED** affirming the May 24, 2021, decision of the ALJ, as upheld by the Appeals Council.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2023.

*Honorable Susan M. Brnovich*
United States District Judge